```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────
MACK-CALI REALTY CORPORATION ET AL.,

                 Plaintiffs,            14 Cv. 10135

        - against -                     OPINION AND ORDER

PEERLESS INSURANCE COMPANY,

                 Defendant.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The Mack-Cali Realty Corporation ("Mack-Cali Corp."), Mack-Cali Realty, L.P. ("Mack-Cali LP"), So. Westchester Realty Associates L.L.C. ("Westchester"), and Mack-Cali So. West Realty Associates L.L.C. ("Mack-Cali Associates") (collectively, the "plaintiffs") bring this action against the defendant Peerless Insurance Company ("Peerless"). The plaintiffs allege that Peerless violated insurance agreements by refusing to defend them in two personal injury lawsuits that are proceeding in the New York State Supreme Court, one in New York County and the other in Westchester County.

The personal injury actions arose out of slip-and-fall accidents at premises for which the plaintiffs had responsibility. Peerless provided liability coverage to the snow removal contractor hired to maintain safe conditions at the premises, and the plaintiffs were "other insureds" under the insurance policies. Peerless alleges that the "other insured"

1

coverage ended when the accidents occurred because the contractor had completed its snow removal work, and therefore the work had been put to its "intended use." The plaintiffs contend that Peerless had a duty to defend them and that the snow removal responsibilities were ongoing, had not concluded, and therefore were not yet put to their "intended use." The plaintiffs now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.[1] For the following reasons, the motion is **granted in part and denied in part.**

### I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The parties are completely diverse. The defendant is incorporated in New Hampshire with its principal place of business in Massachusetts. None of the plaintiffs is incorporated in, has its principal place of business in, or has a partner or member that is a citizen of those two States. The value of declaratory judgments sought by the plaintiffs is uncertain, but the Court will retain jurisdiction over this case. See Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) (holding that "even where [the plaintiffs'] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted. Rather it must appear to a legal certainty from the complaint that the plaintiff[s] cannot recover sufficient damages to invoke federal jurisdiction"(citations omitted)).

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could

3

be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.1993) (internal citations omitted).

## II.

The following facts are undisputed unless otherwise noted.

### A.

Westchester owns 6 Executive Plaza, and Mack-Cali Associates owns 100 Corporate Boulevard. See Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1 Stmt.") ¶¶ 3-4, 9; Defendant's Response to Rule 56.1 Statement ("Def. 56.1 Resp.") ¶¶ 3-4, 9. Both properties are located at the South Westchester Executive Park Complex (the "SWEP complex"). Pl. 56.1 Stmt. ¶¶ 7-9; Def. 56.1 Resp. ¶¶ 7-9. Westchester, Mack-Cali LP, and Mack-Cali Associates are all part of Mack-Cali Realty Corp. Pl. 56.1 Stmt. ¶¶ 1-4; Def. 56.1 Resp. ¶¶ 1-4.

On July 26, 2012, Lascon, Inc. ("Lascon") agreed to provide snow removal and related services to the SWEP complex. Pl. 56.1 Stmt. ¶ 7; Def. 56.1 Resp. ¶ 7. This contract required Lascon to provide these services from October 1, 2012, through April 30,

4

2013. Grossman Decl. Ex. 1(C). On October 1, 2013, Lascon agreed to provide the same services at the same properties from October 1, 2013, through April 30, 2014 (collectively, the "Lascon Contracts"). Id. Ex. 1(D). The Lascon Contracts provide that the "Contractor [Lascon] is responsible for monitoring conditions at the [SWEP Complex]" and that the "Contractor is responsible for ensuring that all services are provided as required to ensure safe conditions for employees, tenants and visitors." Pl. 56.1 Stmt. ¶ 16; Def. 56.1 Resp. ¶ 16. The Lascon Contracts also include an indemnification/hold-harmless provision, the relevant portion of which provides that Lascon shall name Mack-Cali LP, Westchester, and Mack-Cali Associates—among other non-parties—as additional insureds on Lascon's liability policies "to completely protect" the plaintiffs from claims arising out of Lascon's operations. Grossman Decl. Ex. 1(C), Ex. 1(D).[2]

**B.**

Peerless issued Lascon a general liability insurance policy for the period of June 7, 2012, to June 7, 2013, and Lascon renewed the coverage for another year from June 7, 2013, to June 7, 2014 (the "Peerless Policy"). Pl. 56.1 Stmt. ¶ 6; Def. 56.1 Resp. ¶ 6. The Peerless Policy includes two relevant

---

[2]   At oral argument, the defendant represented that it owes all of the plaintiffs a duty to defend if the "intended use" provision does not apply. Tr. at 24.

5

endorsements: the Endorsement Form No. 22-45 NY (12/02) (the "Extension Endorsement") and the Endorsement Form No. 22-132 (04/11) (the "OLC Endorsement"). These Endorsements amended the Peerless Policy to include entities that satisfied certain conditions as additional insureds. Grossman Decl. Ex. 1(A), Ex.1(B).

The OLC Endorsement provides that any person or organization whom Lascon "agree[s] to add as an additional insured in a written contract or written agreement" qualifies as an additional insured. Id. In the Lascon Contracts, Lascon agreed to name Mack-Cali Corp., Westchester, and Mack-Cali LP as additional insureds for 6 Executive Plaza. And Lascon agreed to name Mack-Cali Corp., Mack-Cali LP, and Mack-Cali Associates as additional insureds for 100 Corporate Blvd. Id. Ex. 1(C), Ex. 1(D). The OLC Endorsement includes coverage for the acts of Lascon and those acting on Lascon's behalf "in the performance of [Lascon's] ongoing operations for the additional insured." Id. at Ex. 1(A), Ex. 1(B).

However, the OLC Endorsement[3] also provides that an organization's "status as an additional insured" ends when

---

[3] The Extension Endorsement also contains a similar provision with slightly different wording. However, at oral argument, the defendant agreed that it has a duty to defend all the plaintiffs in this case in the two lawsuits for which they seek coverage under the OLC Endorsement, unless the "intended use" provision

"[t]hat portion of '[Lascon's] work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project" (the "intended use" exclusion).[4] Id. Ex. 1(A), Ex. 1(B).

C.

In September 2013, Shelly Sheppard commenced an action (the "Sheppard Lawsuit") against Mack-Cali Corp., and Westchester in the New York State Supreme Court, Westchester County. Grossman Decl. Ex. 4. Lascon[5] and Mack-Cali LP[6] were subsequently added as

---

applies to the plaintiffs with respect to those lawsuits. Tr. at 24.

[4] At oral argument, the defendant insisted that the "intended use" provision is a definition of coverage for an additional insured, not an exclusion. Regardless of whether the provision is a definition or an exclusion, it serves the same function: to exclude from coverage liability that arises after a certain point. Therefore, the Court will treat the "intended use" provision as an exclusion. See Westview Assocs. v. Guaranty Nat. Ins. Co., 740 N.E.2d 220, 222 (N.Y. 2000) ("At the very least, [the insurer's] interpretation presents an ambiguity in the umbrella policy which must be resolved against the insurer, as drafter of the agreement").

[5] Mack-Cali Corp. and Westchester added Lascon as a third-party defendant in the Sheppard Lawsuit. See Third-Party Summons, Sheppard v. Mack-Cali Realty Corp., No. 64715/2013 (N.Y. Sup. Ct. Feb. 7, 2014), NYSCEF No. 6.

[6] Sheppard subsequently added Mack-Cali LP as a defendant. See Sheppard v. Mack-Cali Realty Corp., No. 64715/2013-37 (N.Y. Sup. Ct. Aug. 11, 2014).

7

parties. Sheppard alleges that she was injured on February 20, 2013, when she slipped on ice on a path to the 6 Executive Plaza parking lot. Pl.'s 56.1 Stmt. ¶ 27; Def.'s 56.1 Resp. ¶ 27. She also claims that Mack-Cali Corp., Westchester, Mack-Cali LP, and Lascon had failed to remove ice and snow from the path. Grossman Decl. Ex. 4.

In April 2014, Yesenia Gonzalez commenced an action (the "Gonzalez Lawsuit") against Mack-Cali Corp., Lascon, Mack-Cali Associates, and other entities in the New York State Supreme Court, New York County. Grossman Decl. Ex. 5. Gonzalez alleges that she was injured on January 15, 2014, when she slipped on snow or ice on the exterior steps leading from Suite 111 at 100 Corporate Boulevard. Pl. 56.1 Stmt. ¶ 37; Def. 56.1 Resp. ¶ 37. She also claims that Mack-Cali Corp., Lascon, and Mack-Cali Associates failed to clear the snow and ice on those steps. Grossman Decl. Ex. 5.

The plaintiffs tendered the Sheppard and Gonzalez Lawsuits to the defendant, claiming that the plaintiffs were additional insureds. Id. Ex. 1(F), Ex. 1(L). Peerless has defended Lascon in these lawsuits, but has refused to defend the plaintiffs. Id. Ex. 1(J), Ex. 1(M).

**D.**

The plaintiffs filed this suit in the New York State Supreme Court, New York County, and the defendant timely removed

8

it. The Complaint includes eight causes of action, each of which turns on the defendant's duty to defend or duty to indemnify the plaintiffs in the Sheppard and Gonzalez Lawsuits.

The plaintiffs moved for partial summary judgment on the First, Second, Fifth, and Sixth Causes of Action. The First and Fifth Causes of Action request declaratory judgments that Peerless has a duty to defend the plaintiffs in the Sheppard and Gonzalez Lawsuits, respectively. Am. Compl. at 9, 11. The Second and Sixth Causes of action request fees and costs that the plaintiffs have incurred in defending those lawsuits. Am. Compl. at 10-12.

The plaintiffs also request a summary judgment declaring that the Peerless Policy is primary to any other insurance coverages procured by the plaintiffs. Finally, the plaintiffs request a reference to the Magistrate Judge to determine the costs that the plaintiffs have already incurred in defending the Sheppard and Gonzalez Lawsuits.

### III.

Because both parties assume that New York law controls, the Court will do the same. See Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995).

### A.

The plaintiffs contend that the defendant has a duty to defend them in the Sheppard and Gonzalez Lawsuits, and should

9

reimburse the plaintiffs for the costs incurred in defending those suits.

Unambiguous terms in an insurance policy should be "given their plain and ordinary meaning," McCarthy v. Am. Int'l Grp., Inc., 283 F.3d 121, 124 (2d Cir. 2002), and ambiguities are "to be construed against the insurer, particularly when found in an exclusionary clause." Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co., 457 N.E.2d 761, 764 (N.Y. 1983). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." W.W.W. Assocs., Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990). Under New York law, an insurer's duty to defend is "exceedingly broad," and "[i]f, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." Auto. Ins. Co. of Hartford v. Cook, 850 N.E.2d 1152, 1155 (N.Y. 2006); see also Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 779 N.E.2d 167, 170 (N.Y. 2002) (holding that allegations in a complaint that are "even potentially within the language of the insurance policy" trigger the insurer's duty to defend). This same standard applies to additional insureds. BP Air Conditioning Corp. v. One Beacon Ins. Grp., 871 N.E.2d 1128, 1132 (N.Y. 2007).

The defendant insists that the plaintiffs were not additional insureds when Sheppard and Gonzalez slipped and fell.

10

According to the defendant, the "intended use" provision is clear: it cuts off coverage for any personal injury that occurs after a person "uses" an area that Lascon plowed. Based on this interpretation, the defendant reasons that Sheppard and Gonzalez "put [Lascon's snow plow work] to its intended use" when they walked in the SWEP complex.

The plaintiffs point to numerous cases where the coverage for "ongoing operations" has been interpreted broadly. Those courts have interpreted that language to include the continuing work of contractors even after their active work has ceased, but where they had ongoing obligations at a site. See, e.g., Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co., 198 F. App'x 148, 150 (2d Cir. 2006) (finding a slip-and-fall action arose out of "ongoing operations" of a snow removal contractor despite the fact that the injury had occurred after the contractor had plowed and salted the area). But the defendant responds that its argument is not based on any dispute over coverage for "ongoing operations." Rather, it contends that the additional insured coverage had ceased when Lascon's work was put to its "intended use." The defendant concedes that there is no case that has relied on an "intended use" provision to cut off coverage that would otherwise be provided for "ongoing operations." Tr. at 13.

The few New York State court cases interpreting "intended use" exclusions involved products liability or construction

11

defects. Those cases are rather straightforward because the insureds had completed a discrete, single task. For example, in Hartford Accident & Indemnity Co. v. J.J. Wicks, Inc., 482 N.Y.S.2d 935 (App. Div. 1984), the insured replaced parts in anesthesia machines. A hospital then used one of the anesthesia machines during an operation, a patient died, and a wrongful death action was initiated. Id. at 936–37. The Appellate Division of the New York State Supreme Court held that the insurer could rely on an "intended use" exclusion because the "anesthesia machine was clearly put to its intended use" during an operation. Id. at 938.

Similarly, in Logan's Silo Sales & Services, Inc. v. Nationwide Mutual Fire Insurance Co., 585 N.Y.S.2d 646 (App. Div. 1992), the insured sold a roller mill. The purchaser was injured when he used the mill and brought various product defect claims against the insured. The insurance agreement excluded from coverage personal injuries that occurred after the insured's work was completed, and the "'work' was deemed completed under the policy as soon as it was 'put to its intended use' by the purchasers." Id. at 646–67. Because the purchaser had used the roller mill before he was injured, the "intended use" provision precluded coverage. Id. at 647.

But this case is not so simple. Unlike in J.J. Wicks and Logan's Silo Sales, Lascon was not hired to provide a one-off

12

service. Rather, its services included maintaining and monitoring the SWEP complex continuously to ensure that it was free of ice and snow. The Lascon Contracts provide that the "Owner's primary objective is for the property(ies) to be maintained in a manner which provides safe conditions for all those using the property(ies) at all times." Grossman Decl. Ex. 1(C), Ex. 1(D). The Contracts further provide that Lascon "is responsible for monitoring conditions at the [SWEP Complex] and determining the necessity of performing any and all services under this contract when snow, icing, and/or melting and refreezing conditions warrant such services being performed." Grossman Decl. Ex. 1(C), Ex. 1(D). The fact that Lascon had a continuing duty to monitor and to clear snow from the SWEP complex is a distinction that makes a difference.[7]

The plaintiffs in the underlying lawsuits allege that they slipped and fell because the SWEP complex was not cleared of ice

---

[7]  Peerless argues that it is not bound by the Terms of Lascon's Contracts to which it was not a party. But Peerless specifically provided coverage to additional insureds, such as the plaintiffs, whom Lascon agreed in writing to add as additional insureds with respect to liability caused by Lascon's acts or omissions in the performance of Lascon's "ongoing operations" for the additional insureds. Lascon's continuing monitoring was part of its "ongoing operations." See Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co., 475 F. Supp. 2d 400, 410 (S.D.N.Y. 2007) ("'[O]ngoing operations' encompasses all performance under the Contract that occurs prior to the completion of the contracted work.").

and snow. If those allegations are true, then Lascon's "work" was never completed and therefore was never put to its intended use. Lascon's "work" was not only to remove the snow and ice from the SWEP complex, but also to monitor the premises to ensure that the snow and ice were removed. And if Lascon did not complete its work, then the work was not put to its "intended use." See Sabia Landscaping v. Merchants Mut. Ins. Co., No. 13cv133820, 2013 WL 6022129, at *3-*4 (E.D. Pa. Nov. 6, 2013) (holding that if a contactor failed "to remove all snow and ice," and someone slipped as a result, then "the slip occurred prior to [the contractor] putting the parking lot back to 'its intended use'"); see also West Bend Mut. Ins. Co. v. Home and Garden Supply Co., No. 1-11-2728, 2012 WL 6963009, at *3-*4 (Ill. App. Ct. Nov. 5, 2012) (reaching the same conclusion). Following the same logic, the Appellate Division of the New York State Supreme Court held that a construction project had "not been put to its intended use" when that "work" has not yet been completed. See Flynn v. Timms, 606 N.Y.S.2d 352, 353-54 (App. Div. 1993); see also Ames Constr., Inc. v. Intermountain Indus., Inc., 712 F. Supp. 2d 1160, 1168-69 (D. Mont. 2010), aff'd sub nom., Ames Constr., Inc. v. Maxum Indem. Co., 445 F. App'x 971 (9th Cir. 2011).

At best, Peerless has established that the phrase "intended use" is ambiguous. That is, the "intended use" provision could

be read to require Peerless to cover only injuries that occur when Lascon is clearing snow. But, as explained above, that is not the only reasonable interpretation of the provision; indeed it is not even the most reasonable interpretation. See also Wash. Energy Co. v. Century Sur. Co., 407 F. Supp. 2d 680, 699 (W.D. Pa. 2005) ("The phrase 'after it has been put to its intended use' is likewise uncertain." (quoting Scott C. Turner, Insurance Coverage of Construction Disputes § 26.26 (2d ed. 2004))).

In general, the interpretation of an ambiguous term requires the Court or a jury to consider extrinsic evidence. But those steps are unnecessary when the issue is the insurer's duty to defend. Under New York law, "[a]ny ambiguity as to the insurer's duty to defend is resolved in favor of the insured." Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2004) (citing Charles F. Evans Co., Inc. v. Zurich Ins. Co., 731 N.E.2d 1109, 1110 (N.Y. 2000)). And the most reasonable reading of the Endorsements is that an "intended use" of Lascon's work is to maintain the safety of the premises from snow and ice conditions.

Therefore, the defendant has a duty to defend the plaintiffs in the Sheppard and Gonzalez Lawsuits because the plaintiffs are additional insureds under the Peerless Policy.

Moreover, because Peerless has not yet defended the plaintiffs in the Sheppard and Gonzalez Lawsuits, Peerless must reimburse the plaintiffs' litigation expenses thus far incurred. See, e.g. Urban Resource Inst. v. Nationwide Mut. Ins. Co., 594 N.Y.S.2d 261 (App. Div. 1993) (affirming an order requiring an insurer to reimburse all legal costs incurred in a covered action); GRE Ins. Grp. V. GMA Accessories, Inc., 691 N.Y.S.2d 244, 248 101, 103 (Sup. Ct. 2008).

Accordingly, the motion for summary judgment on the First, Second, Fifth, and Sixth Causes of Action is **granted.**

### B.

The plaintiffs also requested that the Court refer the case to the Magistrate Judge for an inquest on the amount of the past defense costs to be reimbursed by the defendant. At oral argument, the defendant objected to such a reference. And the Court declines the plaintiffs' request to refer this case to the Magistrate Judge for a damages calculation. Accordingly, the plaintiffs' request for the Court to refer the case to the Magistrate Judge is **denied.**

The plaintiffs have not submitted evidence showing the costs that the plaintiffs have incurred defending the Gonzalez and Sheppard Lawsuits. Thus, at this time, the Court cannot determine the damages to which the plaintiffs are entitled.

16

**IV.**

In their briefs, the plaintiffs argued that the Peerless Policy affords them coverage on a primary and a non-contributory basis.[8] At oral argument, the plaintiffs agreed that the Court should not determine whether Peerless's duty to indemnify the plaintiffs is primary and not subject to contribution. Tr. at 31-32. And Peerless agreed that it would not avoid any duty to defend the plaintiffs on the basis that other insurance procured by the plaintiffs is primary to the Peerless Policy. Tr. at 28.

Accordingly, the plaintiffs' motion for summary judgment declaring that the Peerless Policy is primary to any other insurance policy procured by the plaintiffs is **denied as moot**.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, they are either moot or without merit. The plaintiffs' motion for summary judgment on the First, Second, Fifth, and Sixth Causes of Action is **granted**. The plaintiffs' motion for summary judgment declaring that the Peerless Policy is primary to any other insurance policy procured by the plaintiffs is **denied as**

---

[8]   The defendant did not challenge this claim in its brief. But at oral argument, the defendant insisted that this claim cannot be resolved on this motion because it is not certain whether the plaintiffs have provided all of their relevant insurance policies.

**moot**.  The plaintiffs' motion to refer the case to the Magistrate Judge for an inquest on damages is also **denied**.  The Clerk is directed to close **Docket Number 28.**

**SO ORDERED.**

**Dated:     New York, New York
            July 24, 2015**                    _____/s/_____
                                              **John G. Koeltl
                                       United States District Judge**